**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **CHANEL, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-2086** |
| | ) | |
| **HUANG CONG, and DOES 1-10,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**

Before the Court is Plaintiff Chanel, Inc.'s ("Chanel") August 25, 2011 Motion for Entry of Final Default Judgment Against Defendant. (See Pl.'s Mot. for Entry of Final Default J. Against Def., ECF No. 12.) Defendant Huang Cong ("Cong") has not responded. For the following reasons, Plaintiff's Motion is GRANTED.

**I. Background[1]**

Chanel is a New York corporation with its principal place of business in New York, New York. (Compl. ¶ 2, ECF No. 1.) Chanel manufactures and distributes a wide range of high-quality

---

[1] The facts in this Part come from the factual allegations in Chanel's Complaint, which are deemed admitted due to Defendant's default. See Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110-11 (6th Cir. 1995) (citations omitted).

luxury goods around the world. (Id.) In Shelby County, Tennessee, Chanel operates boutiques and maintains a warehouse used to fulfill its e-commerce orders. (Id.)

Chanel owns a number of federally-registered trademarks, including variations on the word "Chanel," the word "J12," and a monogram consisting of a letter "C" interlocked with another, opposite-facing letter "C" (collectively the "Chanel Marks" or "Marks").[2] (Id. ¶¶ 2, 9; Hahn Decl. ¶ 4, ECF No. 12-2.) The Chanel Marks are registered in International Classes 9, 14, 18, 20, and 25 and are used in manufacturing and distributing Chanel's luxury goods, including its handbags and watches. (Compl. ¶¶ 9-10.)

The Chanel Marks symbolize Chanel's quality, reputation, and goodwill. (Compl. ¶ 11.) Chanel has never abandoned the Marks and has invested substantial time, money, and other resources developing and promoting them. (Id. ¶¶ 11-12.) In the United States, Chanel has used, advertised, and promoted the Chanel Marks in association with its luxury goods, carefully

---

[2] Chanel owns the following federally registered trademarks at issue in this case: CHANEL (registered May 1, 1956 as number 0,626,035), CHANEL (registered November 10, 1970 as number 0,902,190), CHANEL (registered January 19, 1971 as number 0,906,262), CHANEL (registered June 15, 1971 as number 0,906,139), CHANEL (registered March 13, 1973 as number 0,955,074), CHANEL (registered March 13, 1973 as number 0,955,074), CC Monogram (registered June 7, 1983 as numbers 1,241,264 and 1,241,265), CC Monogram (registered January 15, 1985 as number 1,314,511), CHANEL (registered July 9, 1985 as number 1,347,677), CHANEL (registered December 19, 1989 as number 1,571,787), CHANEL (registered November 17, 1992 as number 1,733,051), J12 (registered April 9, 2002 as number 2,559,772), Partial CC Monogram (registered December 13, 2005 as number 3,025,934), CHANEL (registered August 22, 2006 as number 3,133,139). (See Compl. ¶ 9) (collecting trademarks).

monitoring their uses. (Id. ¶ 13.) As a result, consumers readily identify merchandise bearing the Marks as high-quality merchandise sponsored and approved by Chanel. (Id. ¶ 14.) Accordingly, the Chanel Marks have secondary meaning as identifiers of high quality. (Id. ¶ 15.)

Cong and Does 1-10 (collectively, the "Defendants") are individuals and/or business entities. (Id. ¶ 3.) The Defendants, individually and jointly, maintain fully operational websites operating under various domain names (collectively, the "Subject Domain Names").[3] (Id. at 1, ¶ 4.) The Chanel Marks have never been assigned or licensed to the Defendants for use on any of the websites operating under the Subject Domain Names. (See Compl. ¶ 10.) Through the Subject Domain Names, the Defendants advertise, offer, sell, and distribute counterfeit products bearing the Chanel Marks. (See id. ¶¶ 3, 4, 18, 19.) The Defendants' products bear exact copies of the Chanel Marks in the same stylized fashion as genuine Chanel products, but the quality of the Defendants' products is substantially different. (Id. ¶ 17.)

On February 5, 2010, Chanel brought this action against the Defendants. (See Compl.) Chanel alleges that Defendants' actions constitute (1) counterfeiting and infringement under

---

[3] The Subject Domain Names are: cheap-chanel-shopping.com, chanel-gucci-louisvuitton.com, bluestonetrade.com, knockoffnamebag.com, sunglassesmerchant.com, replicabagsmerchant.com, and handbagsjobber.com. (See Compl. at 1.)

Section 32 of the Lanham Act, 15 U.S.C. § 1114, (see Compl. ¶¶ 30-35); (2) false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (see id. ¶¶ 36-41); and (3) cyberpiracy under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), (see id. ¶¶ 44-48).

Chanel filed a Motion to Authorize Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3) of the Federal Rules of Civil Procedure on May 14, 2010. (See Chanel, Inc.'s Mot. to Authorize Alternate Services of Process on Def., ECF No. 4.) The Court granted that motion on November 4, 2010. (See Order Authorizing Alternate Service of Process on Def. Pursuant to Federal Rule of Civil Procedure 4(f)(3), ECF No. 7). Chanel served Cong with copies of the Summons and Amended Complaint by e-mail on November 5, 2010. (See Proof of Service ¶ 3, ECF No. 8-1; Morrow Decl. ¶ 3, ECF No. 9-1.) Over twenty days have elapsed since service was effective, and Cong has not responded. (See Morrow Decl. ¶ 4.) On January 7, 2011, the Clerk entered default against Cong. See Fed. R. Civ. P. 55(a); (Entry of Default, ECF No. 10). Chanel filed the Motion for Entry of Final Default Judgment now before the Court on August 25, 2011.[4] (See Mot. for Default, ECF No. 12.)

---

[4] Chanel's Complaint alleges that Cong acted in concert with various unnamed Defendants Does 1-10. (See Compl. ¶ 5.) However, only Cong has defaulted. (See Entry of Default.) The other Defendants have not been identified or

## II. Jurisdiction

A court's default judgment is invalid unless it has proper jurisdiction. See, e.g., Citizens Bank v. Parnes, 376 F. App'x 496, 501 (6th Cir. 2010) ("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment.") (citing Kroger Co. v. Malease Foods Corp., 437 F.3d 506, 510 (6th Cir. 2006)).

Courts must consider subject-matter and personal jurisdiction, but not defects in venue, before entering a default judgment. Compare In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) (holding that a district court properly raised the issue of personal jurisdiction sua sponte), and Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986) (per curiam) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."), and Columbia Pictures Indus. v. Fysh, No. 5:06-CV-37, 2007 U.S. Dist. LEXIS 11234, 3-4 (W.D. Mich. Feb. 16, 2007) (considering and finding subject-matter and personal jurisdiction before entering a default

---

served. Therefore, this Order applies only to Cong. See County Sec. Agency v. Ohio Dep't of Commerce, 296 F.3d 477, 483 (6th Cir. 2002) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process.") (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 101, 110 (1969)).

judgment), with <u>Rogers v. Hartford Life & Accident Ins. Co.</u>, 167 F.3d 933, 942 (5th Cir. 1999) ("The Supreme Court has made clear that if a party defaults by failing to appear or file a timely responsive pleading, the party waives defects in venue.") (citations omitted), and <u>Williams</u>, 802 F.2d at 1202 ("[I]f a party is in default by failing to appear or to file a responsive pleading, defects in venue are waived, a default judgment may be validly entered and the judgment cannot be attacked collaterally for improper venue." (citing <u>Hoffman v. Blaski</u>, 363 U.S. 335, 343 (1960)).

### A. Subject-matter Jurisdiction

Congress has specifically granted federal question jurisdiction for claims of copyright and trademark infringement. <u>See</u> 15 U.S.C. § 1121(a) (providing for jurisdiction over all trademark claims arising under Chapter 22 of Title 15 of the United States Code); 28 U.S.C. § 1338(a) (providing for jurisdiction of any action arising under a federal law relating to copyrights and trademarks). General federal question jurisdiction exists for any claims arising under the laws of the United States. <u>See</u> 28 U.S.C. § 1331. Chanel has alleged violations of federal statutes barring trademark infringement, false designation of origin, and cyberpiracy. <u>See</u> 15 U.S.C. §§ 1114(1)(a), 1125(a), 1125(d); (Compl. ¶¶ 31-51). Therefore, the

Court has subject-matter jurisdiction over Chanel's claims.  See 15 U.S.C. § 1121(a); 28 U.S.C. §§ 1331, 1338(a).

### B. Personal Jurisdiction

A court's subject-matter jurisdiction arises from the existence of a federal question.  "[P]ersonal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'"  Flynn v. Greg Anthony Constr. Co., 95 F. App'x 726, 740 (6th Cir. 2003) (quoting Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002)).  "Where the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." Bridgeport Music, Inc. v. Still N the Water Publ'g, 327 F.3d 472, 477 (6th Cir. 2003) (citing Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 793 (6th Cir. 1996)).  Because "the Tennessee long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause," federal courts in Tennessee may exercise personal jurisdiction if doing so is consistent with federal due process requirements.  Id. (citing Payne v. Motorists' Mut. Ins. Cos., 4 F.3d 452, 454 (6th Cir. 1993)).

"Personal jurisdiction over an out-of-state defendant arises from 'certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550 (6th Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be specific or general, depending on the type of minimum contacts maintained by the out-of-state defendant. Id. (citing Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1116 (6th Cir. 1994)). The Sixth Circuit applies a three-part test to determine whether specific personal jurisdiction exists.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Air Prods., 503 F.3d at 550 (quoting S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)) (emphasis added).

## 1. Purposeful Availment

To satisfy the first requirement of specific personal jurisdiction, the defendant "must have purposefully availed himself of 'the privilege of acting in the forum state or

causing a consequence in the forum state.'" Id. (quoting S.
Mach Co., 401 F.2d at 381). Where a defendant's contacts with
the forum state result from actions undertaken by the defendant
himself, the defendant has purposefully availed himself of the
privilege of acting in the state. Id. (quoting Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). Physical
presence in the forum state is not required, but a defendant's
connection to the forum state must be "substantial," rather than
a result of "random," "fortuitous," or "attenuated"
circumstances. Id.

Operating a website constitutes personal availment "if the
website is interactive to a degree that reveals specifically
intended interaction with residents of the state." Bird, 289
F.3d at 874 (quoting Neogen Corp. v. Neo Gen Screening, Inc.,
282 F.3d 883, 890 (6th Cir. 2002)) (internal quotation marks
omitted). To determine whether a defendant's website
constitutes personal availment, courts use a sliding scale
approach. Cadle Co. v. Schlichtmann, 123 F. App'x 675, 678 (6th
Cir. 2005) (citing Neogen, 282 F.3d at 890; Revell v. Lidov, 317
F.3d 467, 472 (5th Cir. 2002)). This sliding scale
"distinguishes between interactive websites, where the defendant
establishes repeated online contacts with residents of the forum
state, and websites that are passive, where the defendant merely
posts information on the site." Id. "Interactive websites can

subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction." Id. (citing Neogen, 282 F.3d at 889-91). Where, through a website, a defendant sells products and services to customers in the forum state, the defendant has purposefully availed itself of the privilege of acting in the forum state, even if the customers initiate the sales by placing orders through the website. See, e.g., Neogen, 282 F.3d at 892 (holding that a defendant's shipping products to and accepting payment from forum state customers constituted personal availment); Morel Acoustic, Ltd. v. Morel Acoustics USA, Inc., No. 3-:04-CV-348, 2005 U.S. Dist. LEXIS 32864, at *19-20 (S.D. Ohio Sept. 7, 2005) (concluding that, where a defendant's website "provide[d] specifications and prices, invite[d] orders, provide[d] order forms for downloading and provide[d] an e-mail link for placing orders," the defendant had purposefully availed itself of the forum state).

Cong has operated "fully interactive . . . commercial website[s]" operating under the Subject Domain Names. (See Compl. ¶¶ 1, 3.) Through these websites, Cong has advertised and sold his products to Tennessee residents. (See id. ¶¶ 5-6.) For these reasons, Cong has purposefully availed himself of the privilege of acting in Tennessee, and the first requirement for personal jurisdiction is satisfied. See See Cadle Co., 123 F.

App'x at 678; <u>Neogen</u>, 282 F.3d at 892; <u>Morel Acoustic</u>, 2005 U.S. Dist. LEXIS 32864, at *19-20.

## 2. Arising From

The second requirement is that the plaintiff's claims "arise from" the defendant's contacts with the forum state. <u>Air Prods.</u>, 503 F.3d at 553. The Sixth Circuit has phrased the test for this requirement in a number of ways, including "whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts, . . . or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." <u>Id.</u> (internal citations omitted). Regardless of its phrasing, this standard is a lenient one. <u>Bird</u>, 289 F.3d at 875. A cause of action need not formally arise from a defendant's contacts with the forum. <u>Id.</u> Rather, this test requires only "that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." <u>Bird</u>, 289 F.3d at 875 (quoting <u>Third Nat'l Bank in Nashville v. Wedge Group, Inc.</u>, 882 F.2d 1087, 1091 (6th Cir. 1989))(internal quotation marks omitted).

The gravamen of Chanel's complaint is that Cong committed trademark infringement, false designation of origin, and cyberpiracy by selling products bearing exact copies of the Chanel Marks though various websites, including one with a domain name confusingly similar to one of the Chanel Marks.

11

(See Comp. ¶¶ 28-48.)  Cong's contacts with the forum state are his interactive websites and sales of products to Tennessee residents through those websites.  (See Compl. ¶¶ 5-7.)  There is a "substantial connection" between Chanel's claims and Cong's contacts with Tennessee.  Cf. Bird, 289 F.3d at 875 (finding that a plaintiff's copyright and trademark infringement claims were related to defendants' contacts with the forum state because the defendants' operation of a website both created the contacts and the factual basis for the plaintiff's claims).  Therefore, Chanel's claims arise from Cong's contacts in Tennessee.

### 3. Reasonableness

The third requirement is that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."  Air Prods., 503 F.3d at 554 (quoting S. Mach. Co., 401 F.2d at 381).  If the first two requirements for specific personal jurisdiction are met, an inference arises that the third requirement is also satisfied.  Bird, 289 F.3d at 875.  If "a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Air Prods., 289 F.3d at 554.

Because the first two requirements for personal jurisdiction have been met, there is an inference that the Court may reasonably exercise jurisdiction over Cong. See Bird, 289 F.3d at 875; supra Sections II.B.1-2. Cong has defaulted and has not presented a compelling case that any additional considerations make the Court's exercise of jurisdiction unreasonable. See Air Prods., 289 F.3d at 554.

For the foregoing reasons, the Court's exercise of personal jurisdiction over Cong comports with federal due process requirements. Subject-matter and personal jurisdiction are proper, and the Court may enter a valid default judgment.

### III. Standard of Review

Federal Rule of Civil Procedure 55(b)(2) governs default judgment. See Fed. R. Civ. P. 55(b). "Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the complaint, except for those relating to damages." Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 878 (S.D. Ohio 2007) (citing Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110-11 (6th Cir. 1995)); see also Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading.") Unlike factual allegations, "legal conclusions are not deemed admitted as a result of the entry of default."

_Krowtoh II, LLC v. Excelsius Int'l Ltd._, No. 04-505-KSF, 2007 WL 5023591, at *4 (E.D. Ky. 2007) (citations omitted). Because the Clerk entered default against Cong on January 7, 2011 (_see_ Order of Default), Cong is deemed to have admitted the factual allegations in Chanel's complaint, other than those relating to damages. If the factual allegations provide a sufficient legal basis, the court enters a default judgment and conducts an inquiry to determine damages and other relief. _See Coach, Inc. v. Cellular Planet_, No. 2:09-cv-00241, 2010 U.S. Dist. LEXIS 45087, at *7 (S.D. Ohio May 7, 2010) (citing _Arista Records, Inc. v. Beker Enters._, 298 F. Supp. 2d 1310, 1311-12 (S.D. Fla. 2003)).

## IV. Analysis

### A. Liability

Chanel's undisputed allegations establish that Cong committed trademark infringement, false designation of origin, and cyberpiracy, in violation of 15 U.S.C. §§ 1114(1)(a), 1125(a), and 1125(d).

### 1. Trademark Infringement

The Lanham Act provides liability for trademark infringement if a trademark registrant shows that (1) another person has used any reproduction, counterfeit, copy, or colorable imitation of the registrant's mark, (2) without the registrant's consent, (3) in commerce, (4) in the sale, offer,

14

distribution, or advertisement of any goods or services, (5) where the use is likely to cause confusion or mistake or to deceive. <u>See</u> 15 U.S.C. § 1114(1)(a). Liability often turns on "whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." <u>Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.</u>, 109 F.3d 275, 280 (6th Cir. 1997) (citations omitted).

Chanel's allegations establish Cong's liability for trademark infringement. Chanel is the owner of the Chanel Marks. (<u>See</u> Compl. ¶ 9.) Through the internet, Cong has promoted, advertised, distributed, sold, and/or offered products bearing marks that are exact copies of the Chanel Marks. (<u>See</u> <u>id.</u> ¶¶ 16-23.) Cong has done so without Chanel's consent. (<u>See</u> <u>id.</u> ¶ 21.) By defaulting, Cong has admitted that his using the Marks has likely caused confusion, deception and mistake among members of the trade and the general consuming public as to the origin and quality of his goods. (<u>See</u> <u>id.</u> ¶¶ 18, 23.) For these reasons, Chanel is entitled to judgment on the trademark infringement claim.

## 2. False Designation of Origin

Under the Lanham Act, liability for false designation of origin may arise in a number of ways. See 15 U.S.C. 1125(a). The Act provides liability where a person shows that, (1) in

15

connection with any goods, services, or goods containers, (2) another person has used any word, term, name, symbol, or device (3) that is likely to cause confusion or mistake or to deceive "as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." See 15 U.S.C. 1125(a)(1)(A).

Chanel's undisputed allegations establish Cong's liability for false designation of origin. In advertising, distributing, selling, and/or offering his goods, Cong has used marks that are exact copies of the Chanel Marks. (See Compl. ¶ 17.) The "net effect of [Cong's] actions will be to result in the confusion of consumers who will believe the Defendant's Counterfeit Goods are genuine goods originating from and approved by the Plaintiff." (Id. ¶ 18.) Therefore, Chanel is entitled to judgment on the false designation of origin claim.

### 3. Cyberpiracy

The Anticybersquatting Consumer Protection Act ("ACPA") provides liability for cyperpiracy if a person (1) registers, traffics or uses a domain name (2) that is identically or confusingly similar to a distinctive or famous mark (3) with a "bad faith intent to profit from that mark." See 15 U.S.C. § 1125(d)(1)(A). The ACPA includes a safe harbor provision for a person who "believed and had reasonable grounds to believe that

the use of the domain name was a fair use or otherwise lawful."
Id. § 1125(d)(1)(B)(ii).

Chanel's allegations establish that Cong's actions meet the first element of cyberpiracy under the ACPA. Cong registered the domain names anonymously and for the sole purpose of engaging in illegal counterfeiting activities. (See Compl. at ¶¶ 7, 44.) A famous mark is one that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(2)(A). To determine whether a mark is so recognized, a court considers "all relevant factors," including: (1) the "duration, extent, and geographic reach of advertising and publicity of the mark," (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark, (3) actual recognition of the mark, and (4) whether the mark is registered.

The word "Chanel" is a famous mark under 15 U.S.C. § 1125(2)(A). Chanel registered the mark "Chanel" in various forms in 1955, 1956, 1970, 1971, 1973, 1983, 1985, 1988, 1992, and 2006. (See Compl. ¶ 9.) Chanel has used that mark in advertising and promoting its goods around the world for "an extended period of time." (Compl. ¶ 10.) Due to Chanel's efforts, the public identifies goods bearing any of the Chanel Marks as goods "sponsored and approved by Chanel." (Compl. ¶

14.) Therefore, Chanel is a "famous mark" within the meaning of the ACPA.  See 15 U.S.C. 1125(2)(A)(i-iv).

The domain names cheap-chanel-shopping.com and chanel-gucci-louisvuitton.com are confusingly similar to the Chanel Mark J12.  "Courts generally have held that a domain name that incorporates a trademark is 'confusingly similar to' [a famous] mark if 'consumers might think that [the domain name] is used, approved, or permitted' by the mark holder."  DaimlerChrysler v. Net Inc., 388 F.3d 201, 205 (6th Cir. 2004) (citing 15 U.S.C. § 1125(d)(1)(C)) (quoting Ford Motor Co. v. Greatdomains.Com, Inc., 177 F. Supp. 2d 635, 641 (E.D. Mich. 2001).  Courts consider "slight differences between domain names and registered marks, such as the addition of minor or generic words" to be irrelevant.  Id. at 206 (quoting Ford Motor Co., 177 F. Supp. at 641).  Although Cong has added the descriptive word "cheap" to the Chanel Mark, the domain name cheap-chanel-shopping.com is nonetheless confusingly similar to the Chanel Mark.  See, e.g., HER, Inc. v. RE/MAX First Choice, LLC, 468 F. Supp. 2d 964, 973 (S.D. Ohio 2007) (finding that domain name www.insiderealliving.com was confusingly similar to REALLIVING mark and rejecting argument that the addition of the word "inside" eliminated confusion); Ford Motor Co., 177 F.Supp.2d at 641 (internal quotations omitted) (finding that the domain names

"4fordparts.com," "jaguarcenter.com," and "volvoguy.com" were confusingly similar to the marks FORD, JAGUAR, and VOLVO).

Cong has registered the domain names with the bad faith intent to profit from the Chanel Marks and the goodwill associated the Chanel Marks. The ACAP provides nine non-exclusive factors for courts to consider in determining whether there is bad faith intent to profit:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
>
> (VII) the person's provision of material and misleading false contact information when applying for

the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i).

Cong has no intellectual property rights in a domain name using any of the Chanel Marks, his legal name has no relation to the domain name, and he has not used the domain name for a bona fide offering of goods and services. <u>See</u> 15 U.S.C. § 1125(d)(1)(B)(i)(I-III). By defaulting, Cong has admitted that he has used the Chanel Marks to drive internet traffic to all of his domain names to increase the value of his domain names at Chanel's expense. <u>See</u> 15 U.S.C. § 1125(d)(1)(B)(i)(V); (Compl. ¶ 8). He has also admitted that he used false or misleading information to register the domain names. <u>See</u> § 1125(d)(1)(B)(i)(VII); (Compl. ¶ 7). The Chanel Marks are famous marks. <u>See</u> 15 U.S.C. § 1125(d)(1)(B)(i)(IX); <u>supra</u> Section IV.A.3. Therefore, Cong acted with the bad faith intent

to profit from the Chanel Marks.  Chanel is entitled to judgment on its cyberpiracy claim.

## B. Permanent Injunction

Chanel seeks a permanent injunction enjoining Cong from further violations of Chanel's trademark rights.  (See Compl. ¶ 49(a).)  Under 15 U.S.C. § 1116, a court may issue injunctions "according to principles of equity and upon such terms as the court may deem reasonable," to prevent future violations of 15 U.S.C. § 1125.  See 15 U.S.C. § 1116 (permitting injunctive relief for violations of 15 U.S.C. §§ 1125(a), 1125(b), and 1125(d)).  "A plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, 'that considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted,' and that it is in the public's best interest to issue the injunction."  Audi AG v. D'Amato, 469 F.3d 534, 549 (6th Cir. 2006) (quoting eBay, Inc., et al. v. MercExchange, LLC, 547 U.S. 388 (2006)).  Although a district court must normally hold an evidentiary hearing before issuing a permanent injunction, where "'no factual issues remain for trial,' [a] district court's decision to grant a permanent injunction without such a hearing could still be upheld...."  Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP, 423 F.3d 539, 546 (6th Cir. 2005) (quoting Moltan Co. v. Eagle-Picher

Indus., Inc., 55 F.3d 1171, 1174 (6th Cir. 1995)). Because Cong has defaulted, there are no factual issues in dispute, and a hearing is unnecessary.

A trademark registrant may be irreparably harmed when consumers purchase counterfeit products from another's website instead of genuine products sold from the registrant. Audi AG, 469 F.3d at 550. As long as the website remains online, there is potential for future harm, and the registrant has no adequate remedy at law. Id. Where consumers may be misled by a person's use of trademarks, it is in the public interest to issue an injunction barring such use. Id.

Chanel is entitled to an injunction. Cong has sold counterfeit goods with copies of the Chanel Marks, using Chanel's reputation and goodwill to make a profit and causing irreparable harm to Chanel's goodwill and business reputation. See Audi AG, 469 F.3d at 550; (Compl. ¶¶ 22, 25, 34, 41, 48). Because Cong has continued to advertise and sell counterfeit Chanel products through his websites, Chanel has no adequate remedy at law. See Audi AG, 469 F.3d at 550; (Compl. ¶¶ 24, 48). In balancing the hardships between the parties, Cong "faces no hardship in refraining from willful trademark infringement," while Chanel "faces hardship from loss of sales." See Audi AG, 469 F.3d at 550. Because consumers have likely been misled by Cong's actions, it is in the public interest to

issue an injunction.  See Audi AG, 469 F.3d at 550; (Compl. ¶¶ 21, 26, 34, 40).  Chanel is entitled to a permanent injunction enjoining Cong from future actions that would violate Chanel's trademark rights.

### C. Other Equitable Relief

Chanel seeks additional equitable relief.  Chanel requests an order requiring that the Subject Domain Names be cancelled or transferred to Chanel. (See Compl. ¶ 49(d).)  Under Rule 65 of the Federal Rules of Civil Procedure, an order granting an injunction must explain its reasoning, state its terms specifically, and describe in reasonable detail the acts restrained or required.  See Fed. R. Civ. P. 65(d)(1).  The Sixth Circuit has stated that "injunctive relief should be no broader than necessary to remedy the harm at issue." Banner v. City of Flint, 99 F. App'x 29, 39 (6th Cir. 2004) (citing United States v. Miami Univ., 294 F.3d, 797, 816 (6th Cir. 2002)).

"In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  15 U.S.C. § 1125(d)(1)(C).  This provision "explicitly authorizes courts to transfer a domain name after finding an ACPA violation." DaimlerChrysler, 388 F.3d at 207 n.4 (citing 15 U.S.C. § 1125(d)(1)(C)).  Courts in the Sixth Circuit have

generally ordered defendants to transfer ACPA-violating domain names. See, e.g., Specialty Vehicle Acquisition Corp. v. Am. Sunroof Corp., No. 07-13887, 2008 U.S. Dist. LEXIS 67968, at *6-7 (E.D. Mich. Sept. 8, 2008) (transferring domain name where allegations admitted by default established ACPA violation); Ford Motor Co., 441 F. Supp. 2d at 843 (transferring domain name where allegations admitted by default established ACPA violation); see also DaimlerChrysler, 388 F.3d at 207 n.4 (upholding district court's transfer of a domain name where the defendant's use of the domain name violated the ACPA). Because "Defendant has created a large Internet-based counterfeiting scheme using at least six (6) different websites" in violation of the ACPA, the Court orders Defendant to transfer to Chanel the domain names: cheap-chanel-shopping.com, chanel-gucci-louisvuitton.com, bluestonetrade.com, knockoffnamebag.com, sunglassesmerchant.com, replicabagsmerchant.com, and handbagsjobber.com. (Pl's Mem. 12.)

Chanel requests that the Court's injunction include two additional orders. Chanel requests an order that the top-level domain registry for each of the Subject Domain Names place the Subject Domain Names on "registry hold status," which would de-link the Subject Domain Names from the Internet Protocol addresses hosting the content of Cong's websites. (See Compl. ¶ 49(c).) Chanel also requests an order that anyone acting in

concert with Cong, "and those with notice of the injunction, including any Internet search engines, Web hosts, domain-name registrars and domain-name registries that are provided with notice of the injunction, cease facilitating access to any or all websites through which the Defendants engage in the sale of counterfeit and infringing goods using the Chanel Marks." (See id. ¶ 49(b).) Chanel has provided no legal authority for these requests. Nor has Chanel made a showing "as to the necessity or the attendant burdens of enjoining non-parties such as Google and Yahoo! from providing search engine links" to Cong's sites. Junying Cui, 2010 U.S. Dist. LEXIS 68689, at *6. Chanel is not entitled to this equitable relief.

### D. Statutory Damages

Chanel seeks statutory damages for Cong's Lanham Act and ACPA violations. (See Chanel's Mem. of Points and Authorities in Supp. of its Mot. for Entry of Final Default J. Against Def., ECF No. 12-1.) ("Pl.'s Mem.")

### 1. Lanham Act

In cases where a counterfeit mark is used in the sale, offering for sale, or distribution of goods, a plaintiff may elect to recover statutory damages in the amount of not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed. See 15 U.S.C. § 1117(c)(1). If the court finds that the use of

the counterfeit mark was willful, it may award up to $2,000,000 per counterfeit mark per type of good or services sold, offered for sale, or distributed. <u>See</u> 15 U.S.C. § 1117(c)(2).

A "counterfeit mark" is one that "is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d). The Chanel Marks used by Cong are registered by Chanel with the United States Patent and Trademark Office for the same types of goods sold by Cong. (<u>See</u> Compl. ¶ 9.) Therefore, the marks on Cong's products are counterfeit marks under the statute. <u>See</u> 15 U.S.C. § 1116(d). Cong has used these counterfeit marks in selling, offering, distributing, and/or advertising goods, and Chanel may elect statutory damages. <u>See</u> 15 U.S.C. § 1117(c)(1); <u>supra</u> Section IV.A.I.

Courts have broad discretion in awarding statutory damages. <u>Ford Motor Co.</u>, 441 F. Supp. 2d at 852 (citing <u>Peer Int'l Corp. v. Pausa Records, Inc.</u>, 909 F.2d 1332, 1336 (9th Cir. 1990)). Within the limits established by Congress, statutory damages are to be awarded in an amount "the court considers just." <u>See</u> 15 U.S.C. § 1117(c). The amount of statutory damages does not depend on actual damages, and "statutory damages are appropriate in default judgment cases because the information needed to

prove actual damages is within the infringers' control and is not disclosed." McGee, 490 F. Supp. 2d at 882.

Chanel requests that the Court award $1,104,000 in statutory damages. (See Pl.'s Mem. 15.) Chanel starts with the statutory minimum of $1,000 and asks the Court to treble that amount to $3,000 to reflect Cong's willfulness. (See id.) Chanel then asks the Court multiply $3,000 by 16, the number of types of goods sold, and then by 23, the number of Chanel Marks counterfeited. Chanel calculates a total award of $1,104,000, "which is at the very low end of the range prescribed by [statute] and should be sufficient to deter the Defendant and others from continuing to counterfeit . . . Chanel's trademarks." (Id.)

Statutory damages in the amount of $1,104,000 are appropriate. When awarding damages for trademark infringement, courts must award treble damages where a defendant (1) intentionally uses a mark or designation, (2) knowing that the mark or designation used is a counterfeit mark under 15 U.S.C. § 1116(d), (3) in the sale, offer, or distribution of goods or services. See 15 U.S.C. § 1117(b)(1); 15 U.S.C. § 1114(1)(a). The marks on Cong's goods are counterfeit marks under the Lanham Act. See 15 U.S.C. § 1116(d). By defaulting, Cong has admitted that, despite his knowledge of Chanel's rights in the Marks, he has intentionally used the Chanel Marks for the purpose of

capitalizing on Chanel's goodwill and reputation. See 15 U.S.C. § 1117(b)(1);(Compl. ¶¶ 16, 22). Cong used these counterfeit marks in the sale, offer, and/or distribution of goods. See 15 U.S.C. § 1117(b)(1); (Id. ¶¶ 20-22). As a result, Chanel is entitled to treble damages.

A statutory damages award of $1,104,000 is consistent with awards by other district courts in this circuit. See, e.g., McGhee, 490 F. Supp. 2d at 882 (awarding statutory damages of $710,000 for violations of five trademarks and seven copyrights); Microsoft Corp. v. Sellers, 411 F. Supp. 2d 913, 921 (E.D. Tenn. 2006) (awarding statutory damages of $460,000 for violations of four trademarks and two copyrights). The amount sought is also well below the maximum statutory damages that Chanel could recover. Even without a showing of willfulness, the Court could award statutory damages of up to $9,000,000. See 15 U.S.C. § 1117(c)(1) (authorizing maximum statutory damages of $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed"). Because Chanel has shown that Cong acted willfully, the Court could award statutory damages of up to $90,000,000. See 15 U.S.C. § 1117(c)(2) (authorizing statutory damages of up to $2,000,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed.") For those reasons, the Court concludes that Chanel's requested award of $1,104,000

is just.  See 15. U.S.C. § 1117(c)(1); cf. McGhee, 490 F. Supp. 2d at 882; Sellers, 411 F. Supp. 2d 913 at 921.

### 2. ACPA

In cases of bad faith registration, trafficking or use of a domain name confusingly similar to a famous mark, a plaintiff may elect to recover statutory damages "in the amount of not less than $ 1,000 and not more than $ 100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). Because Chanel has established that Cong registered a domain name that is confusingly similar to Chanel's famous marks and that he did so in bad faith, Chanel may elect statutory damages. See supra Section IV.A.3.

As under the Lanham Act, courts have wide discretion in determining the amount of statutory damages. See HER, Inc. v. RE/MAX First Choice, LLC, No. C2-06-492, 2009 WL 4730710, at *2 (S.D. Ohio Dec. 10, 2009). "Courts view a violation of the ACPA as particularly flagrant when the defendant is a direct competitor of a plaintiff." Id. In such cases, courts have awarded $100,000 per domain name, the maximum under the statute. Id. (collecting various cases) (citations omitted).

Chanel requests that the Court award damages in the amount of $10,000 for Cong's use of the Subject Domain Names. (See Pl.'s Mem. 19.) By selling counterfeit and infringing products bearing the Chanel Marks, Cong has competed directly with Chanel

and profited at Chanel's expense. (See Compl. ¶¶ 3-8.)
Therefore, the Court finds $10,000 just and awards Chanel
statutory damages in that amount under 15 U.S.C. § 1117(d).

### E. Costs

Chanel seeks to recover its litigation costs. (Pl.'s Mem.
19.) Under 15 U.S.C. § 1117(a), a plaintiff whose trademark
rights have been violated is entitled to recover the costs
incurred to bring the action. Therefore, Chanel is entitled to
recover its $350 filing fee and $350 process server fee. (See
Pl.'s Mem. 19.) The Court awards costs of $700 under 15 U.S.C.
§ 1117(a).

### V. Conclusion

For the foregoing reasons, Chanel's Motion for Entry of
Final Default Judgment is GRANTED.

It is therefore ORDERED that:

(1) Cong and his agents, representatives, servants,
employees, and all persons in active concert and participation
with him are hereby restrained and enjoined from:

(a) manufacturing or causing to be manufactured,
importing, advertising or promoting, distributing, selling or
offering to sell counterfeit and infringing goods using the
Chanel Marks;

(b) infringing, counterfeiting, or diluting the Chanel
Marks;

(c) using the Chanel Marks, or any mark or any similar mark or trade dress, in the sale of any unauthorized goods;

(d) using any logo, trade name or trademark or trade dress which may be calculated to falsely advertise that Cong's services or products are sponsored by, authorized by, endorsed by, or in any way associated with Chanel;

(e) falsely representing themselves as connected with Chanel, through sponsorship or association;

(f) engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Cong are in any way endorsed by, approved by, and/or associated with Chanel;

(g) using any reproduction, counterfeit, copy, or colorable imitation of the Chanel Marks in the publicity, promotion, sale, or advertising of any goods sold by Cong, including, without limitation, handbags, watches, and other goods;

(h) affixing, applying, annexing or using in the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Cong's goods as those of Chanel, or in any way endorsed by Chanel;

(i) offering such goods in commerce; and

(j) otherwise unfairly competing with Chanel.

(2) The domain names cheap-chanel-shopping.com, chanel-gucci-louisvuitton.com, bluestonetrade.com, knockoffnamebag.com, sunglassesmerchant.com, replicabagsmerchant.com, and handbagsjobber.com. be immediately transferred by Cong, his assignees and/or successors in interest or title to Chanel's control. To the extent the current Registrars do not facilitate the transfer of the domain names to Chanel's control within ten (10) days of receipt of this Order, the Registries and/or their agents shall, within thirty (30) days, transfer the domain names to a United States based Registrar of Chanel's choosing, and that Registrar shall transfer the domain names to Chanel.

(3) Cong is liable to Chanel for $1,114,000 in statutory damages.

(4) Cong is liable for $700.00 in costs.

So ordered this ___ day of December, 2011.

s/ Samuel H. Mays, Jr._____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE